# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP.,<br>    Plaintiff,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. No. 17-151-LPS |
| RED TREE INVESTMENTS, LLC,<br>    Plaintiff,<br>    v.<br>PETROLEOS DE VENEZUELA, S.A., and<br>PDVSA PETROLEOS, S.A.,<br>    Defendants. | Misc. Nos. 22-68-LPS & 22-69-LPS |
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., et al.,<br>    Plaintiffs,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. Nos. 21-18-LPS, 22-131-LPS, & 22-263-LPS |
| OI EUROPEAN GROUP B.V.,<br>    Plaintiff,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. No. 19-290-LPS |
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD.,<br>    Plaintiffs,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. No. 21-46-LPS |
| RUSORO MINING LIMITED,<br>    Plaintiff,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. No. 21-481-LPS |

| | |
|---|---|
| TIDEWATER INVESTMENT SRL and ) <br> TIDEWATER CARIBE S.A., ) <br>     Plaintiffs, ) <br>     v. ) <br> BOLIVARIAN REPUBLIC OF VENEZUELA, ) <br>     Defendant. ) | Misc. No. 19-79-LPS |
| PHILLIPS PETROLEUM COMPANY ) <br> VENEZUELA LIMITED and ) <br> CONOCOPHILLIPS PETROZUATA B.V., ) <br>     Plaintiffs, ) <br>     v. ) <br> PETROLEOS DE VENEZUELA, S.A., ) <br> CORPOGUANIPA, S.A., and PDVSA ) <br> PETROLEO, S.A., ) <br>     Defendants. ) | Misc. No. 19-342-LPS |
| NORTHROP GRUNMAN SHIP SYSTEMS, ) <br> INC., ) <br>     Plaintiff, ) <br>     v. ) <br> THE MINISTRY OF DEFENSE OF THE ) <br> REPUBLIC OF VENEZUELA, ) <br>     Defendant. ) | Misc. No. 20-257-LPS |
| CONOCOPHILLIPS GULF PARIA B.V., ) <br>     Plaintiff, ) <br>     v. ) <br> CORPORACION VENEZOLANA DEL ) <br> PETROLEO, S.A., and PETROLEOS DE ) <br> VENEZUELA, S.A., ) <br>     Defendants. ) | Misc. No. 22-264-LPS |
| KOCH MINERALS SARL and KOCH ) <br> NITROGEN INTERNATIONAL SARL, ) <br>     Plaintiffs, ) <br>     v. ) <br> BOLIVARIAN REPUBLIC OF VENEZUELA, ) <br>     Defendant. ) | Misc. No. 22-156-LPS |
| GOLD RESERVE INC., ) <br>     Plaintiff, ) <br>     v. ) <br> BOLIVARIAN REPUBLIC OF VENEZUELA, ) <br>     Defendant. ) | Misc. No. 22-453-LPS |

| | |
|---|---|
| SIEMENS ENERGY, INC.,<br>  Plaintiff,<br>  v.<br>PETROLEOS DE VENEZUELA, S.A.,<br>  Defendant. | Misc. No. 22-347-LPS |
| VALORES MUNDIALES, S.L. and<br>CONSORCIO ANDINO, S.L.,<br>  Plaintiffs,<br>  v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>  Defendant. | Misc. No. 23-298-LPS |
| CONOCOPHILLIPS PETROZUATA B.V.,<br>CONOCOPHILLIPS HAMACA B.V.,<br>CONOCOPHILLIPS GULF OF PARIA B.V.,<br>and CONOCOPHILLIPS COMPANY,<br>  Plaintiffs,<br>  v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>  Defendant. | Misc. No. 22-464-LPS |
| PHARO GAIA FUND LTD. and PHARO<br>MACRO FUND LTD.,<br>  Plaintiffs,<br>  v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>  Defendant. | Misc. No. 23-360-LPS |
| PHARO GAIA FUND LTD., PHARO MACRO<br>FUND LTD., and PHARO TRADING FUND,<br>LTD.,<br>  Plaintiffs,<br>  v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>  Defendant. | Misc. No. 23-361-LPS |
| RUDI LOVATI and ALESSANDRO<br>LUCIBELLO PIANI,<br>  Plaintiffs,<br>  v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>  Defendant. | Misc. No. 23-340-LPS |

| | |
|---|---|
| GRAMERCY DISTRESSED OPPORTUNITY FUND LLC,<br>　　　　Plaintiff,<br>　　　　v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>　　　　Defendant. | Misc. Nos. 23-378-LPS & 23-379-LPS |
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE,<br>　　　　Plaintiff,<br>　　　　v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>　　　　Defendant. | Misc. No. 23-397-LPS |
| ALTANA CREDIT OPPORTUNITIES FUND SPC, ALTANA CREDIT OPPORTUNITIES FUND 1 SP, and ALTANA FUNDS LTD. CAYMAN,<br>　　　　Plaintiffs,<br>　　　　v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>　　　　Defendant. | Misc. No. 23-608-LPS |
| CONOCOPHILLIPS PETROZUATA B.V., CONOCOPHILLIPS GULF OF PARIA B.V., PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED, and CONOCOPHILLIPS HAMACA B.V.,<br>　　　　Plaintiffs,<br>　　　　v.<br>GIRARD STREET INVESTMENT HOLDINGS LLC, G&A STRATEGIC INVESTMENTS I LLC G&A STRATEGIC INVESTMENTS II LLC, G&A STRATEGIC INVESTMENTS III LLC, G&A STRATEGIC INVESTMENTS IV LLC, G&A STRATEGIC INVESTMENTS V LLC, G&A STRATEGIC INVESTMENTS VI LLC, G&A STRATEGIC INVESTMENTS VII LLC, GRAMERCY DISTRESSED OPPORTUNITY FUND, LLC, SIEMENS ENERGY, INC., THE BOLIVARIAN REPUBLIC OF VENEZUELA, PETROLEOS DE VENEZUELA, S.A., and PDV HOLDING, INC.,<br>　　　　Defendants. | Misc. No. 24-1140-LPS |

**ORDER**

Having reviewed the Joint Status Report submitted by the Special Master (D.I. 1373[1]), the additional statements attached to it (*id.* Exs. A & B), and the wave of recent filings between October 18 and November 15 (*see, e.g.*, D.I. 1364, 1365, 1375, 1406, 1414, 1415), including those directed to the Republic of Venezuela's Motion for Access ("Access Motion") (D.I. 1408; *see also* D.I. 1409, 1429, 1431),

**IT IS HEREBY ORDERED** that:

1. As previously ordered (D.I. 1427), the Court will hold a status conference, and hear argument on the matters identified in this Order and Inclinations, according to an agenda to be provided closer to the day, on Friday, December 13, beginning at 10:00 a.m., in Courtroom 2B of the J. Caleb Boggs Federal Building in Wilmington, Delaware.

2. The Republic's Motion to Enforce Access to the Stock Purchase Agreement and Service of Papers (D.I. 1408) ("Access Motion") is GRANTED.  No later than November 26, the Special Master shall file an "unredacted" version of the SPA (consistent with the minimal redactions contemplated in footnote 3), making this unredacted version available to the public as well as the Republic.

The Court agrees with the Republic that it "is entitled to service of the full SPA, as well as all filings made on the Court docket." (D.I. 1409 at 1)  The principal basis the Special Master offers for withholding the SPA from the Republic is that the SPO directs that "the Special Master shall not consult with or provide copies of any *Non-Binding Indications of Interest*, *Bids*, or *Stalking Horse Bids* to any Sale Process Party pursuant to the terms of these

---

[1] All references to the docket index ("D.I.") are to the *Crystallex* docket, Misc No. 17-mc-151, unless otherwise noted.

Bidding Procedures if such Sale Process Party has a Bid pending, or has expressed any written interest in bidding for the PDVH Shares." (D.I. 1429 at 1) (quoting D.I. 480-1 Ex. 1 at 13; emphasis modified)  As the Republic persuasively responds, the SPA is *not* a non-binding indication of interest, bid, or stalking horse bid;[2] it is, instead, the transaction the Special Master is, at this point, (seemingly) asking the Court to adopt. (D.I. 1431 at 1) (observing that SPO does not contemplate depriving Republic, even if it is viewed as a potential bidder, of "an executed SPA with a party the Special Master has now declared to be the 'Successful Bidder' and which the Special Master is now actively promoting as the 'highest and best' option for the Court to adopt").

The Court further agrees with the Republic that there is a meaningful distinction between withholding bids from a *potential* bidder, which the Republic chose not to view in the past, and "withholding the terms of the agreement he has reached with the bidder he has selected," as the Special Master is now doing. (D.I. 1409 at 6)  Nothing about the Republic's reservation of its rights in July, when it declined access to potential bids, forecloses the Republic from maintaining its current request to view the entirety of the documentation associated with the Special Master's selected bid.

Additionally, the Special Master's justification for allowing Crystallex to have access to the unredacted SPA, while depriving the Republic of the same, is unpersuasive.  The Special Master states that he would not oppose access by the Republic if only the Republic would represent that it has no "present intention" to bid on the PDVH Shares. (D.I. 1429 at 1)  It

---

[2] The Special Master advised the Court just over a year ago that he no longer "intend[ed] to solicit bids for a Stalking Horse Bidder as part of the Marketing Process." (D.I. 771 at 2)  Nor has he designated either of the Amber Energy bids as a Stalking Horse Bid, as that term is defined in the SPO. (*See* D.I. 481 at 20)

2

does not appear to the Court that the Republic has such a present intention; instead, it has reserved its right to propose an alternative transaction, which might include the Republic itself bidding on the PDVH Shares, particularly if the Amber Energy SPA – which the Republic opposes – cannot be improved upon. (D.I. 1409 at 7) ("[O]ther Sale Process Parties – just like the Republic – have reserved the right to propose alternatives to a sale to Amber Energy.") The Court does not see a material difference between the Republic's posture and, for example, that of Crystallex, a Sale Process Party who told the Court repeatedly at the October 1 hearing that circumstances might cause it to credit bid. (*See, e.g.*, D.I. 1357 at 56) ("We would credit bid despite our inclination not to do so if this is, you know, the only deal that's on the table.")

Further, the Special Master has repeatedly indicated he plans to make the SPA public concurrently with the filing of his Bidder Protections Motion. (D.I. 1429 at 3) ("[T]he SPA would be made publicly available at the time the Special Master filed a motion for stalking-horse protections.") The Special Master's willingness to make the SPA public simply upon his *filing* of a motion – with no bidder protections then actually yet being in place, and no guarantee the Court would grant his motion – undermines the contention that it will be truly harmful to Amber Energy (or anyone else) to require the SPA to be made public now, in advance of the filing of the Special Master's motion.

Granting the Access Motion will also ease, to at least some small extent, the challenges of this sprawling, complex litigation, for the parties as well as the Court. The current status – where the Court receives filings in connection with a multitude of disputes, on which it wishes to hear from at least all the Sale Process Parties, but finds that only some but not all of those parties have access to one another's filings and other pertinent materials – is nearly untenable. To the extent there is tension between, on the one hand, the Republic's rights as a litigant and

3

the public's right to access court filings, *see In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 676 (3d Cir. 2019) ("[T]he common law right of access begins with a thumb on the scale in favor of openness – the strong presumption of public access."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (explaining that presumption of access applies most strongly to "matters that directly affect an adjudication"), and, on the other hand, the Special Master's attempt to conduct the Sale Process under extraordinarily challenging circumstances, the perhaps "customary" protections a bidder would ordinarily seek in a transaction of this sort may, on occasion, have to yield to the realities of litigation.

The Access Motion secondarily asks that the Special Master "cease instructing parties to withhold from the Republic portions of their filings on this Court's docket." (D.I. 1409 at 1) This part of the Access Motion appears to be unopposed, as it is nowhere specifically addressed in the Special Master's brief. In any case, this part of the motion is granted for the reasons given above. The Special Master shall, in addition to ceasing to instruct parties to withhold portions of Court filings from the Republic, work with the parties and the Republic to ensure that the Republic is served with unredacted versions of any filings to which the Special Master's instructions previously applied.

3. The Special Master shall – and any Sale Process Party, Additional Judgment Creditor, or other interested entity may – file its position on the Court's Inclinations, as set out below, on the following schedule and in compliance with the following page limits: (a) opening position due Tuesday, November 26 and not to exceed twenty (20) double-spaced pages; (b) answering brief due Tuesday, December 3 and not to exceed twelve (12) double-spaced pages; and (c) reply brief due Friday, December 6 and not to exceed five (5) double-spaced pages.

*Inclinations*

4. The Court is presently inclined to proceed in the <u>Litigation</u> as follows (and as further described in the subparagraphs below): (i) resolve the Injection Motion[3] (D.I. 1248), which the Court currently anticipates doing based on the papers; (ii) determine bidder protections that will apply to *any* bidder who is prepared to be the starting point bidder (either as a Stalking Horse or otherwise), which could be Amber Energy; and (iii) thereafter, require the Special Master to identify the best-available bid (before and then again after a Topping Period), make a recommendation as to whether the Court should approve the best-available bid, and resolve objections to that recommendation.

    A. The Court is presently inclined to deny the Injunction Motion.[4] It appears to be unnecessary and unwarranted, for reasons including: (i) Amber Energy has proposed an Alternative Transaction Term Sheet (D.I. 1414 at 1-2), which would not include an escrow for the Alter Ego Claims, which may be an indication that even Amber Energy is prepared to modify its bid rather than withdraw it, in the absence of the requested injunction; (ii) in any event, other bidders have been, and may still be, willing to purchase the PDVH Shares even without an injunction of the Alter Ego Claims (*see, e.g.*, D.I. 1419 at 3) (Gold Reserve noting it had made offer containing "No similar conditions"); (iii) the Alter Ego Claims, which are universally criticized by the Special Master, Sale Process Parties, and

---

[3] All capitalized terms, unless expressly defined in this Order, have the meanings given to them in the Sales Procedure Order (D.I. 481) or the October 18, 2024 joint status report filed by the Special Master (D.I. 1373).

[4] Those filing briefs according to the schedule set out above may, if they wish, provide feedback on the Court's Inclinations regarding the Injunction Motion, but they should understand that the Injunction Motion is already fully briefed and has been argued. Thus, the Court may issue its ruling on that motion at any time, including before the completion of the Inclinations briefing.

Additional Judgment Creditors as being worthless and mere nuisances, can be litigated in the courts in which they are pending (possibly more expeditiously than they can be here), and may be dismissed or otherwise found to lack merit by those courts; (iv) it appears that claims materially identical to the Alter Ego Claims were filed and have been pending throughout the Sale Process and were disclosed to potential bidders;[5] and (v) fundamentally, while the Alter Ego Claims may impact the value of the PDVH Shares which this Court has attached and is attempting to sell, the Court's obligation is to market those shares in a manner designed to maximize their true value, recognizing that the true value may turn out to be negatively impacted by the Alter Ego Claims, but that reality (if it proves true) does not necessarily empower the Court to enjoin or impede those claims.

Further, the Court is not inclined to grant the Special Master's request that the Court set a deadline for parties to bring in this Court requests for adjudication of alter ego claims. (D.I. 1374 at 2; D.I. 1415 at 4-5)  Nor is the Court inclined to undertake to resolve, in the context of the *Crystallex* Action, the fact issue of whether PDVH is the alter ego of the Republic and/or PDVSA, or the related issue of whether PDVH is subject to reverse veil-piercing. (D.I. 1374 at 2)[6]

        B.    The Court is not inclined to determine bidder protections in connection with the specific Amber Energy offer that has been presented by the Special Master but, rather,

---

[5] The Venezuela Parties represent that the "virtual data room . . . included litigation disclosures from PDVH and CITGO of alter ego claims filed in 2019 by OI European Group in this Court and in 2020 by Rusoro in the Southern District of Texas, and of the potential that other present or future judgment creditors of the Republic of PDVSA might also seek to hold the CITGO Companies directly liable for their judgments on an alter ego theory." (D.I. 1418)

[6] The Court is aware that its docket now includes *ConocoPhillips Petrozuata B.V. v. Girard Street Inv. Holdings LLC*, C.A. No. 24-1140 (D. Del. Oct. 14. 2024).

to establish bidder protections that will apply to whichever bid the Special Master deems the best-available as the Sales Process proceeds following the upcoming status conference. (The Special Master may determine that the Amber Energy initial transaction or its alternative transaction is the best-available.) The Court's inclination is that bidder protections should include, among other things: (i) a reasonable termination fee for the bidder; (ii) a requirement for a good faith deposit; (iii) provision that the purchase agreement and all necessary documentation be definitively and fully negotiated before the bidder protections come into effect to protect the successful bidder; (iv) provision that this definitive documentation will be filed with the Court and made public (with redactions only to protect the confidential business information of PDVH and/or its subsidiaries); and (v) establishment of a Topping Period, of sufficient length as to allow for the possibility of better bids to be prepared, presented to the Special Master, and carefully evaluated by the Special Master.

        C.    The period for Sale Process Parties, Attached Judgment Creditors, and other interested entities to object to the Special Master's recommendation, or alternatively to support it, will be after (and only after) the Special Master identifies a best-available bid (allowing the bidder making that bid to obtain the bidder protections), a Topping Period, a renewed identification by the Special Master of a best-available bid (which may be the same bid previously identified as best-available), and a recommendation from the Special Master as to whether the Court should approve or reject his identified best-available bid.

    5.    The Court is further inclined to require the <u>Sale Process</u> to continue in parallel with the Litigation outlined above – rather than, as appears to have occurred in connection with the Amber Energy SPA, essentially halting the Sale Process even as definitive documentation is being negotiated and terms are being modified (see, most notably, the Amber Energy

7

alternative transaction, described at D.I. 1414) – as follows: (i) require, consistent with the Court's grant of the Access Motion explained above, the SPA and all associated schedules and other necessary documents (including escrow-related documentation, if escrows are part of the transaction), be filed, with minimal redactions,[7] on the public docket and, therefore, provided to the Republic of Venezuela; (ii) require, as soon as practicable, that the data room be reopened to any legitimate potential bidder that signs a non-disclosure agreement; (iii) set a date by which the Special Master will be required to make a final recommendation ("Final Recommendation"), which must be accompanied by public, final versions of all necessary documentation, showing the bid (i.e., a singular bid[8]) the Special Master has identified as the best-available bid, and only at that point triggering the bidder protections and the Topping Period; (iv) set a date by which the Special Master will be required, after the completion of the Topping Period, to make an updated final recommendation ("Updated Final Recommendation"), which may be the same as or different from the Final Recommendation, identifying the best-available bid (a singular bid), accompanied by public, final versions of all necessary documentation; (v) set a schedule for briefing objections to (and support of) the

---

[7] All parties, including the Republic, "recognize[] the need to protect CITGO's confidential business information from public disclosure and support[] the redaction of that information from public filings." (D.I. 1409 at 5 n.7; see also D.I. 1373 at 6 (requesting that Court permit public documents to "omit or redact certain provisions and schedules deemed to be confidential information of CITGO, or information that would otherwise be damaging to the pecuniary interest of CITGO")) The Court agrees. All references in this Order and Inclinations to "public" and "unredacted" versions of filings should be understood to permit this limited category of information to remain redacted from public disclosure.

[8] The Court is not inclined to permit the Special Master to propose multiple versions of a transaction with a single bidder he has selected as the Successful Bidder, which seems to make an already complicated situation even moreso, for little (if any) benefit. Moreover, it is unfair to potential bidders participating in a Topping Period to have to figure out how to top two (or more) versions of the bid the Special Master selects as best-available.

Updated Final Recommendation, with the objections period beginning only upon the filing of the Updated Final Recommendation; and (vi) scheduling a Sale Hearing, at which the Court will consider the objections to the Updated Final Recommendation, allowing the Court to make a decision as to whether to accept or reject it.

None of the foregoing steps has yet occurred. The Special Master's submission on September 27 of a "Notice of Successful Bidder" (D.I. 1325) is not the required Final Recommendation. (*See* D.I. 1429 at 5 (citing D.I. 1373); *see also* D.I. 1429 at 5 (Special Master stating as recently as November 14 that he "has not yet requested any relief with respect to the [Amber Energy] SPA"))

6.     The Court is inclined to require that the bidding protections and Topping Period provisions provide further elaboration on the framework by which the Special Master will evaluate which bid is the best-available and whether to recommend that the Court approve that bid. (*See, e.g.*, D.I. 481 at 15-17; D.I. 472-1 at 8-13, 15-17 (setting out factors to be taken into account in determining Successful Bid)) Relatedly, the Court would welcome, in the upcoming submissions, views as to whether the Special Master should develop and disclose to potential bidders (including Amber Energy) a list of material terms that any successful bidder must agree to (e.g., relating to appeal contingencies, whether the bidder may terminate if the Special Master fails to prevail on a particular motion, maximum amount of escrows (if any) permitted to reserve for Alter Ego Claims and 2020 Bondholders, etc.) so that any competition among bidders might be focused on price.

7.     The Court is further inclined to require the Special Master to accompany his Final Recommendation and Updated Final Recommendation with (i) "a projection of the amount that would be received by the Judgment Creditors" under the identified best-available bid, as

9

requested by ACL and OIEG (D.I. 1373 at 8); and (ii) "an[] estimate[] [he] has prepared on the impact [of any] adjustments on the [headline] purchase price and potential distributions to creditors in the current waterfall" if such adjustments are a feature of the identified best available bid, as Crystallex requests (DI 1373-2 Ex B-1).

8. To the extent modifications are required to the governing SPO to accomplish what the Court is persuaded is the best course of action after considering the forthcoming input in response to these Inclinations (see *infra* paragraph 8 below), the Court will be inclined to modify the SPO accordingly.

9. The Court is not inclined to grant the 2020 Bond Entities' request that it direct the Special Master "to negotiate a new SPA that respects the 2020 Bond Entities' rights." (D.I. 1375-1 at 10)  The 2020 Bond Entities will have access to the unredacted SPA as soon as the Special Master acts pursuant to the Court's grant of the Access Motion.

Wilmington, Delaware
November 20, 2024

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT

10